IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Jovan McRant, # 315608,                      )
                                             )        Civil Action No. 6:14-3179-JMC-KFM
                           Petitioner,       )
                                             )        **REPORT OF MAGISTRATE JUDGE**
            vs.                              )
                                             )
Warden, MacDougall Correctional             )
Institution,                                 )
                                             )
                           Respondent.       )
_____ )

            The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief

pursuant to Title 28, United States Code, Section 2254.

            Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is

authorized to review post-trial petitions for relief and submit findings and recommendations

to the district court.

## BACKGROUND

            The petitioner is currently incarcerated in the McDougall Correctional

Institution of the South Carolina Department of Corrections.  The petitioner was indicted by

the Lexington County Grand Jury in March 2005 for armed robbery, possession of a firearm

or knife during commission of a violent crime, kidnapping, and possession, sale or delivery

of a pistol by certain persons unlawful under the age of twenty-one, stolen pistol, serial

number removed (app. 586–93).  The petitioner was represented by F. Arnold Beacham

on the charge.  On May 15–17, 2006, the petitioner was tried by jury before the Honorable

Larry R. Patterson, South Carolina Circuit Judge.  At the close of evidence, the court

directed a verdict of acquittal on the kidnapping charge (app. 336–38).  The jury convicted

the petitioner on the remaining charges (app. 398).  At the conclusion of the trial, the court

sentenced the petitioner to fifteen years imprisonment on the armed robbery conviction; five years for possession of a weapon during the commission of a violent crime; and five years for possession of a pistol by a person less than twenty-one years of age.  All sentences were ordered to be served concurrently (app. 404).

## FACTS

### Trial

On December 13, 2004, the victim in this case, Harlcart Carter, was walking to an apartment complex in West Columbia around 9:30 p.m.  He saw a white Crown Victoria driving in the direction he was headed and then parking in the apartment complex parking lot.  There were two black males in the car.  As Carter proceeded, he saw Audrey "Candy" Miller and a few other people he knew at the end of the street (app. 50–51, 141).  As he greeted Miller, Carter noted that the two men had gotten out of the Crown Victoria.  Miller also noticed the two strangers.  The men confronted Carter and Miller, initially asking about drugs.  The petitioner's partner was wearing a letterman jacket.  The petitioner hid his face with a knit cap, pointed a handgun at Carter and told Carter to give up his money.  Carter told the petitioner that he only had five dollars and pulled it out of his pocket.  The petitioner then ordered Carter to lie on the ground, and put the gun in the small of Carter's back and searched his pockets looking for money.   During this time, Miller was slowly backing away from the men and telling the petitioner not to hurt Carter (app. 56–58, 143, 146–49).  After the petitioner finished going through Carter's pockets, he let Carter go.  Carter ran around a nearby apartment complex banging on doors for help and trying to get someone to call 911.  Carter and Miller were able to see the white car and get the tag number.  The petitioner and the other individual got back in the white car and started to leave the area.  As they were leaving, they saw that Carter was telling some people in an apartment complex parking lot what happened.  The petitioner drove by the group of people, and his partner fired three shots into the parking lot (app. 58–62, 100, 151).

2

After the shooting, Carter was able to call 911 and West Columbia police officers Anthony Myers and Charles Bramlett arrived at the scene. Carter told the officers what had just happened and that he would be able to identify the robbers. Carter also gave Officer Myers the tag number of the Crown Victoria, which was registered to the petitioner's mother. Officers spoke with the petitioner's mother, who told them that the petitioner had the car at his apartment in Richland County. Subsequently, law enforcement spoke with the petitioner (app. 63, 194–96, 206–08, 211–12).

Law enforcement also gathered evidence at the scene, including three bullet casings and a red knit glove. A search warrant was executed by Investigator Edwards on the Crown Victoria. The petitioner voluntarily gave the car keys to Officer Edwards who directed Investigator Bramlett to process the car. A brown and tan jacket was found inside the car (app. 209–11, 213–15, 265)

Two days after the robbery, Carter looked at a photo lineup prepared by Investigator Edwards (app. 65, 92–93, 268). During the lineup, Carter identified the petitioner as the man who robbed him by circling the photo (app. 93). Miller also gave a statement to Investigator Edwards and identified the petitioner on the photo lineup and in court (app. 101–02, 152–57, 164–65, 266–67, 269–70). After Carter and Miller had identified the petitioner on the photo lineup, Investigator Edwards secured an arrest warrant for the petitioner (app. 273)

### Direct Appeal

After his trial, the petitioner filed a timely notice of appeal. He was represented by Appellate Defender Kathrine H. Hudgins of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. On May 19, 2008, appellate counsel filed a Final Brief of Appellant in the South Carolina Court of Appeals and raised the following issues:

3

1. Did the trial judge err in refusing to suppress the results of gun shot residue testing based on the State's failure to timely disclose the results to defense counsel?

2. Did the trial judge err in refusing to grant a continuance to allow defense counsel to hire an expert to review the State's gun shot residue testing results when counsel received the results on Friday, May 12, 2006, at 1:30 PM and the case was called for trial on Monday, May 14, 2006?

(Spp. 409).

The State filed its final brief on May 7, 2008 (app. 419–28). The South Carolina Court of Appeals, without hearing oral argument in the matter, affirmed the convictions by unpublished opinion (app. 430). *See State v. McRant*, Unpublished Opinion No. 2009-UP-203 (S.C. Ct. App. May 18, 2009).

**PCR**

On December 9, 2009, the petitioner filed an application for post-conviction relief ("PCR"), raising the following claims:

a. Counsel failed to inform applicant that a hung jury occurred while the applicant was waiting in the holding tank for the jury to reach a decision.

b. Counsel failed to object to the prosecutorial misconduct arising from the prosecution's introduction of false testimony.

c. Counsel informed the jury that the applicant's *Miranda* rights were never read to him, but counsel failed to question investigators why *Miranda* rights were not read when cross examining them.

d. Counsel failed to inform the jury of all known charges about the victim and state's witness, which the judge approved specifically which charges could be brought up.

e. Counsel failed to question investigators when cross examining about why the victim was not arrested when admitting to officers and investigators that he smoked crack hours before he called law enforcement, which is in discovery package.

f. Counsel failed to object to the judge's dynamite *allen* charge.

4

g. Counsel failed to object to the judge statement to the jury "Your verdict has to be unanimous" because the jury has the right not to agree.

h. Counsel failed to object to the prosecutorial misconduct when prosecution stated to the jury in closing argument "He doesn't deserve your sympathy" which was improper because it constituted personal opinion regarding applicant's credibility.

i. Counsel failed to impeach state's witness Candy Miller when she was given the opportunity to explain or deny her inconsistent statement and she did not admit to her statement, which was in discovery package.

j. Prosecution statement during closing argument "He doesn't deserve your sympathy" was improper misconduct because it constituted personal opinion regarding applicant's credibility, and a prosecutor may not express personal opinions about the defendant's guilt or credibility and should avoid making unfair or improper remarks about the defendant defense counsel or defense witness.

k. Prosecutor's statement during closing argument "Is it a conspiracy theory that the victim and the witnesses and several members of law enforcement have all decided to come in, put their hand on the bible and tell you lies under oath to convict this defendant for some mysterious reason?" was improper and prosecutorial misconduct, because prosecution may not vouch for the credibility of government witnesses, offer his or her personal integrity or oath of office to bolster the government's case.

l. Prosecutor's statement in closing argument "Certainly he has prior convictions, but he doesn't have any weapons violations." "He's not a drug trafficker, no drug convictions, no possession or selling of drugs." was prosecutorial misconduct and false testimony by the prosecution about the victim because the judge approved specifically which charges could be brought up, and well aware the victim had drug convictions and prosecutor may not knowlingy present false testimony and has a duty to correct that he or she knows to be false. prosecution did not correct.

m. Counsel failed to inform, and show the jury that the State's victim, and witness statement's were dated for 2/17/05, and 10/15/04, and the applicant was arrested in December of 04, and the crime allegedly took place in December.

5

n. Counsel failed to ask investigators while they were on the stand about why the state's victim, and witness statements were dated months before the crime allegedly took place.

o. Counsel failed to inform, and show the jury where the victim admitted to smoking crack hours before he called the Police which is in discovery package.

p. Counsel was or has tampered with state's evidence, because his motion of discovery he came to trial with was retyped, and had different date's on statement's from applicant's motion of discovery.

(App. 437–38) (grammatical errors in original).[1]

The State made its return to the application on March 4, 2010 (app. 440–43). Robert M. Cook, II, represented the petitioner in the action (app. 444).

An evidentiary hearing was held April 25, 2012, before the Honorable Clifton Newman, South Carolina Circuit Judge (app. 445). At the beginning of the hearing, PCR counsel argued that there were "numerous cumulative errors of his trial counsel" that warranted relief (app. 450). At the conclusion of the hearing, the PCR court took the matter under advisement and invited the submission of proposed orders from each party (app. 541). By order dated July 9, 2012, and filed on July 12, 2012, the PCR court denied relief and dismissed the application (app. 566–81). The PCR court addressed the following issues in the order:

1. Failure to insist that applicant be present during all phases of the trial;

2. Failure to object to the timing of the *Allen* charge;

3. Failure to be in court on time;

4. Failure to call Burley Bookman and Bernard Hutto as witnesses at trial;

_____

[1]The respondent has provided legible copy of the petitioner's PCR application (doc. 21-5). The photocopy of the PCR application in the PCR appendix (app. 431–39) is difficult to read.

5. Failure to adequately cross-examine witnesses;

6. Failure to challenge forensic evidence;

7. Failure to object to portions of solicitor's closing argument.

(App. 572–80).  The PCR court additionally found the petitioner "affirmatively waived the remaining allegations set forth in his application at the hearing" in that his "failure to address these issues at the hearing indicates a voluntary and intentional relinquishment of this right to" present those issues (app. 580).  The petitioner did not seek to alter or amend to address any other issues; however, the petitioner appealed the denial of relief.

**PCR Appeal**

On February 5, 2013, the petitioner's appellate counsel, Dayne C. Phillips of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a Petition for Writ of Certiorari in the Supreme Court of South Carolina.  The following issue was presented:

> Did trial counsel provide ineffective assistance of counsel by failing to object to the solicitor's closing argument when the solicitor's comments: impermissibly appealed to the passions of the jurors; improperly vouched for the credibility of the State's witnesses; misrepresented the victim's prior criminal history; and so infected the trial with unfairness as to make the resulting conviction a denial of due process?

(Doc. 21-6 at 2).

The State filed its return on June 21, 2013.  On June 23, 2014, the South Carolina Court of Appeals denied the petition.  The petitioner was barred from seeking review from the Supreme Court of South Carolina. *See Ellison v. State*, 676 S.E.2d 671, 672 (2009) (barring petitions for writ of certiorari where "the Court of Appeals has issued an order denying a writ of certiorari in a PCR matter…").  The South Carolina Court of Appeals issued the remittitur on July 14, 2014.

7

***Federal Petition***

On August 13, 2014, the petitioner filed his federal habeas petition (doc. 1). On December 15, 2014, the respondent filed a motion for summary judgment (doc. 20). By order filed December 8, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to respond to the motion (doc. 22). On December 22, 2014, the petitioner filed a response in opposition (doc. 24). The respondent filed his reply on January 5, 2015 (doc. 27).

In his federal habeas petition in this case, the petitioner makes the following claims:

> **Ground One**: Did trial counsel provide ineffective assistance of counsel by failing to object to the solicitor's closing argument when the solicitor's comments: impermissibly appealed to the passions of the jurors; improperly vouched for the credibility of the State's witnesses; misrepresented the victim's prior criminal history; and so infected the trial with unfairness as to make the resulting conviction a denial of due process?

> **Ground Two**: Failure to insist that his client be present during all phases of the trial.

> **Ground Three**: Failure to object to the timing of the *Allen* charge.

> **Ground Four**: Failure of trial counsel to be in court on time.

> **Ground Five**: The totality of other trial errors. Prejudice to the Defendant.

(Docs. 1 & 1-1).

The respondent contends that all grounds except a portion of Ground One are procedurally defaulted (doc. 21 at 1, 12, 15). The respondent indicates that the petition is timely under 28 U.S.C. § 2244(d)(1) (doc. 21 at 11 n. 2). As to Ground One, the respondent contends that the state court records support the PCR court's factual findings (*id*. at 12). The respondent also contends that a cumulative error doctrine is not applicable

8

to the above-captioned case, and, in any event, the petitioner's apparent cumulative error contention is procedurally defaulted (*id*. at 22–24).

   In his response to the motion for summary judgment, the petitioner argues: (1) it is obvious that "both" PCR counsel are clearly ineffective (doc. 24 at 1); (2) the first PCR counsel was ineffective for failing to file a Rule 59(e) motion to make the State address all the specific improper comments as to which the petitioner testified at the PCR hearing (*id*.); (3) the prosecutor's remarks were "so improper" and it would be a "clear miscarriage of justice" for this district court to fail to consider this claim (*id*.); (4) habeas relief and a new trial should be granted "or a plea deal bargain" (*id*.); (5) it is clear and obvious that the arguments that the State does not want to be reviewed and considers to be defaulted are the petitioner's strongest issues (*id*. at 2); (6) the petitioner's guilt is not overwhelming, and the initial hung jury supports this conclusion (*id*.); (7) the prosecutor's arguments were improper and prejudiced the petitioner (*id*.); (8) the curative instructions were not given so clearly and increased the likeliness of ineffective assistance of counsel (*id*.) (9) the Solicitor improperly kept vouching for the victim and assured the jury that the victim would not lie (*id*. at 2–3); (10) the State does not want the Solicitor's comment to be reviewed (*id*. at 3); (11) the prosecutor's comments on the "conspiracy theory" and the Bible were improper (*id*.); (12) this federal court should conduct an expedited review of the State's determination of lack of prejudice (*id*. at 4); (13) the statement of Audrey Miller is dated two months before the actual crime (*id*.); (14) any juror would want to know why Audrey's Miller's statement was dated two months before the warrants and the victim's statement (*id*.); (15) the petitioner's trial counsel was ineffective because the trial judge threatened to put him in jail (*id*. at 4–5); (16) it is not fair to speculate whether or not the failure to protect the petitioner's rights had an actual effect on the jury as opposed to an assumed effect (*id*.); and (17) in the PCR court's order, the PCR judge referred to the fact that the statement of the State's witness is dated two months before the victim's statement

9

and warrant (*id.*).  Appended to the petitioner's response are excerpts from the PCR judge's order (doc. 24-1), excerpts from the petition for writ of certiorari in the PCR case (doc. 24-2), and a list of "ISSUES PRESENTED" (doc. 24-3).

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts

10

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Exhaustion

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code  § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review.  *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[2]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review*. State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]."  559 S.E.2d at 854.  Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The petitioner timely pursued and exhausted his direct appeal remedies. *See generally* Rule 203(b)(2), SCACR (setting a ten (10) day limit in which to appeal after sentence). He has no direct appeal remedies still available to him in state court. He has also pursued and exhausted his PCR remedies in his PCR action as a matter of right. *See* S.C. Code Ann. § 17-27-90 ("All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended application."); *Wade v. State*, 559 S.E.2d 843, 847 (S.C. 2002) ("An individual under PCR effectively is granted one chance to argue for relief and must do so within a year of his final appeal."); and *Gibson v. Sta*te, 495 S.E.2d 426, 428 (S.C. 1998) ("Exhaustion [of state PCR

remedies] includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review."). The petitioner has no further PCR remedies available to him on these matters.

***Procedural Bar***

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he or she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984). If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d 907, 915 (4th Cir. 1997) (citations omitted).

13

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the United States Supreme Court carved out a "narrow exception" that modified the "unqualified statement in *Coleman*, [501 U.S. at 754-55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."  In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21.  The Court in *Martinez* also noted:

14

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

In Ground One, the petitioner claims trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument (doc. 1 at 5-8; doc. 1-1 at 1-12). While Ground One was the only ground raised in the PCR appeal, the respondent argues that "the only allegation resolved [in the PCR proceedings] was the allegation of ineffective assistance in failing to object to the solicitor's argument concerning the victim's possible prior drug conviction" (doc. 21 at 15). The respondent contends that any other allegations as to the prosecutor's closing argument are defaulted as they were not addressed in the PCR judge's order and were not available for review in the PCR appeal (*id.*). In his response to the motion for summary judgment, the petitioner argues that he testified in the PCR hearing about several other allegedly improper statements in the prosecutor's closing argument, but his PCR counsel did not specifically raise them in the PCR order (doc. 24 at 2-3). Thus, he contends that his PCR counsel should be deemed ineffective for failing to pursue these issues, and his default on the claims should be excused (*id.*). Specifically, the petitioner claims his trial counsel should have objected when the prosecutor improperly vouched for the victim by making the following statement: "Because the only other alternative would be that Carter made that up. He made up that detail. That wouldn't make any sense. If he were going to make something up, if he were going to lie, he would have just said: I got the tag number" (*id.* (quoting app. 380)). He also argues that the following statement by the prosecutor was improper: "Or is it a conspiracy theory that the victim and the witnesses and several members of law enforcement have all decided to come in, put

15

their hand on the Bible and tell you lies under oath to convict this Defendant for some mysterious reason" (*id.* at 3 (quoting app. 368-69)).

The petitioner's trial counsel argued in closing that credibility of the witnesses was key and, in particular, challenged the testimony from Mr. Carter (armed robbery victim) and Ms. Miller (witness to armed robbery) (app. 364). The State may properly respond with argument on credibility. *Matthews v. State*, 565 S.E.2d 766, 768 (S.C. 2002) ("A solicitor may argue the credibility of the State's witnesses if the argument is based on the record and its reasonable inferences."). Accordingly, there was no error upon which trial counsel could object and obtain any relief. Here, the alleged ineffective assistance of trial counsel claim was insubstantial, and thus the petitioner has failed to show cause for the procedural default of these claims. *See Martinez*, 132 S.Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

Grounds Two, Three, Four, and Five were not raised in the PCR appeal, and the South Carolina appellate courts would find them procedurally defaulted if the petitioner attempted to raise them now. Therefore, they are barred from federal habeas review absent a showing of cause and actual prejudice, or actual innocence. In his response to the motion for summary judgment, the petitioner contends that "both" PCR counsel were ineffective, which should excuse his default (doc. 24 at 1). Grounds Two, Three, Four, and portions of Five (alleging that trial counsel failed to properly cross-examine witnesses, failed to challenge inconsistent forensic evidence, and failed to object to portions of the Solicitor's closing argument) were raised in the PCR proceedings, and the PCR court ruled upon these issues (app. 572-80). The plaintiff has failed to show that his PCR counsel's performance fell below an objective standard of reasonableness with regard to these

16

grounds for relief. *See Ford v. McCall*, C.A. No. 12–2266-GRA, 2013 WL 4434389, at *11 (D.S.C. Aug.14, 2013) (citing *Horonzy v. Smith*, No. 11–234, 2013 WL 3776372, at * 6 (D. Idaho Sept.12, 2012) ("The application of the *Strickland* test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one.")).  While the grounds were not raised in the PCR appeal, a claim of ineffective assistance of PCR *appellate* counsel cannot be a basis to avoid the default. *See Coleman*, 501 U.S. at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."). *See also Martinez*, 132 S.Ct. at 1319–1320 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here."); *Saratt v. Cartledge*, C.A. No. 8:14-cv-138-RBH, 2015 WL 628186, at *20 (D.S.C. Feb. 12, 2015) ("The *Martinez* exception does not extend to PCR appellate counsel. . . . Therefore, Petitioner has not demonstrated cause for not raising these issues in his petition for writ of certiorari, and these grounds are procedurally defaulted.") (citations omitted).

            In Ground Five, the petitioner also alleges "that the record as a whole reflects a trial that contained so many errors, some serious, some perhaps less so, that the Petitioner was prejudiced as a result" (doc. 1-1 at 19).  Such an argument was not raised and ruled upon in the PCR proceeding. To the extent the petitioner argues that the ineffective assistance of PCR counsel in failing to raise this claim constitutes cause for the

procedural default of this portion of Ground Five,[3] the *Martinez* exception will not allow the petitioner to avoid default.  The Fourth Circuit Court of Appeals does not recognize the cumulative error doctrine to find error where the individual errors are not proven; rather, the Fourth Circuit has instructed that each claim is analyzed individually under the appropriate constitutional framework. *Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998); *see also Causey v. McCall*, C.A. No. 4:13-581-TMC, 2014 WL 130447, at *16 (D.S.C. Jan. 14, 2014) ("Petitioner argues that the cumulative effect [of] the errors raised was in violation of his rights to due process and warrants relief. Having found that none of the issues raised by Petitioner amounted to error, he cannot aggregate them to form a constitutional violation."). Further, South Carolina has not recognized a separate review independent of specific allegations of actual error and prejudice. *See Lorenzen v. State*, 657 S.E.2d 771, 771 n.3 (S.C. 2008) ("Although we recognize that whether the cumulation of several errors, 'which by themselves are not prejudicial, would warrant relief is an unsettled question in South Carolina,' we do not believe the facts of this case present an opportunity to definitively decide this question.") (citations omitted); *Simpson v. Moore*, 627 S.E.2d 701, 710 (S.C. 2006) ("Because the PCR court found that only one of Simpson's allegations had merit, there was no need to conduct a cumulative-error analysis.").  Based upon the foregoing, the petitioner has not shown that his PCR counsel was deficient in failing to raise such an argument.  Accordingly, he has failed to show cause for the procedural default of the cumulative error issue in Ground Five.

Based upon the foregoing, portions of Ground One and Grounds Two through Five are procedurally defaulted.

---

[3]A claim of ineffectiveness of PCR counsel is not cognizable as a ground for relief under the federal habeas corpus statutes.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Martinez*,132 S.Ct. at 1320 (§ 2254(i) precludes habeas petitioner from relying on the ineffectiveness of his or her post-conviction attorney as a ground for relief but not from establishing cause for a procedural default); *Auls v. Cohen*, C.A. No. 3:11-2930-RMG, 2013 WL 496239, at *3 (D.S.C. Feb. 6, 2013) ("Petitioner also objects that his PCR counsel was ineffective . . . , however, this is not a proper basis for a § 2254 petition").

***Merits***

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent

part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the

standard of review in cases, like the instant case, that are governed by the Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant

19

> precedent in a manner that reasonable jurists would all agree
> is unreasonable." *Id.* When a petitioner has properly presented
> a claim to the state court but the state court has not adjudicated
> the claim on the merits, however, our review of questions of law
> and mixed questions of law and fact is *de novo*. *See Jones v.
> Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying
> pre-AEDPA *de novo* standard of review to claims of ineffective
> assistance of counsel that were properly raised, but not
> adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). However, the review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is
> "doubly" so. The *Strickland* standard is a general one, so the
> range of reasonable applications is substantial. Federal habeas
> courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness
> under § 2254(d). When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is
> whether there is any reasonable argument that counsel
> satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

In Ground One, the petitioner claims trial counsel was ineffective for failing to object to portions of the prosecutor's closing argument (doc. 1 at 5-8; doc. 1-1 at 1-12).

20

This ground was addressed by the PCR judge and was raised in the PCR appeal.  The

PCR judge considered the following factual arguments within this ground:

> Specifically, the Applicant argues that the solicitor inserted her personal opinion as to the veracity of the testimony by Applicant's mother and grandmother. (Tr. p. 373). Additionally, Applicant argues that the solicitor inserted her personal opinion when she stated that Applicant did not deserve the jury's sympathy. Last, the Applicant argues that the solicitor misled the jury when she stated that the victim did not have any drug charges.

(App. 579; *see generally* app. 467–75; 437–38).[4]

> At the PCR hearing, the PCR judge also considered trial counsel's testimony

relating to why he did not object to the prosecutor's closing argument:

> At the PCR hearing counsel testified that he did not object to any of the solicitor's comments during closing argument because objecting during closing is a matter of tactics; that counsel believed Applicant was in a good position going into closing arguments, that counsel did not believe any objection would be sustained, and that there is a point at which objecting can inflame the jury. Counsel testified that he recalled thinking during the solicitor's closing that the solicitor was on the defense and did not want to impede on the jury at this point.

(App. 579).

> The PCR court found that the prosecutor's comments did not rise to the level

of warranting a new trial and that the petitioner had failed to present any evidence that the

victim had prior drug convictions (app. 579-80).  Furthermore, the PCR concluded:

> This Court is not convinced that the solicitor's arguments even reach the level of being improper, but certainly there is no evidence that Applicant was prejudiced. This Court finds that counsel was not ineffective for failing to object. Counsel provided a rational explanation as to why he did not object and this Court accepts counsel's reasoning as to why he did not object.  Therefore, this allegation is denied and dismissed.

---

[4]In his Ground Five cumulative error argument, the petitioner also raises the trial counsel's failure to object to these same statements in the prosecutor's closing argument (doc. 1-1 at 18-19).

(App. 580).

It must be noted that the question as to whether the prosecutor's closing comments were improper is not before this federal court and was not before the PCR court. Instead, the matter before this court is whether trial counsel's failure to object to the prosecutor's comments constituted ineffective assistance of counsel. *See Drayton v. Evatt*, 430 S.E.2d 517, 519–20 (S.C. 1993) (issues that could have been raised at trial or on direct appeal cannot be raised in a PCR application absent a claim of ineffective assistance of counsel).

The PCR judge correctly identified and was properly guided by the *Strickland* standard (app. 572, 579–80).   Thus, the question is one of whether the facts were reasonably determined by the PCR court and supported by the record and whether the test was reasonably applied to those facts. The state court records support the facts, and the PCR judge's order shows a reasonable application of the *Strickland* test.

As to the victim's alleged criminal history, the PCR judge reviewed the victim's "rap" sheet as provided by trial counsel at the PCR hearing.  The rap sheet does not reflect a drug offense for the victim (app. 549–65).  Also, at the PCR hearing, trial counsel testified that he had reviewed the victim's rap sheet but concluded that nothing therein could be used for impeachment because the crimes listed were more than "ten years out" or were misdemeanors: "I don't recall that there was anything that was - - could be used for impeachment, but I do recall going through the priors" (app. 490).  There could be no factual basis for trial counsel to object to the prosecutor's comments for an alleged misrepresentation with respect to the victim's criminal history. *See, e.g., Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable."); and *cf. Smith v. Padula*, 444 F. Supp. 2d 531, 539 (D.S.C. 2006) ("In short, trial counsel cannot be ineffective for failing to make a meritless futile objection.  Neither *Strickland* prong was satisfied, and no

22

habeas relief should issue.").  As such, the state court records confirm this critical factual finding by the PCR judge.  Furthermore, in the absence of a factual basis for a proper objection, trial counsel was correct that objection was not warranted nor would be fruitful. *See Moody v. Polk,* 408 F.3d 141, 151 (4th Cir. 2005) ("Without evidence that reasonable counsel would have believed a continuance stood a realistic chance of being granted, Moody cannot demonstrate that reasonable counsel would necessarily have requested a continuance.") (quoting *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.")).

As to the prosecutor's closing arguments in general, trial counsel at the PCR hearing testified that he did not want to risk inflaming the jury with objections:

> Q    With regard to the closing comments, I'm not sure you were able to hear Mr. McRant's testimony, During the solicitor's closing, did you feel that there was anything that you should have objected to?
>
> A    I don't think so.  There is a point at which you have got to make a decision as to whether or not you are going to inflame the jury - - you can upset a jury by objecting too much or objecting too vehemently or vociferously.
>
> It's a matter of tact or tactic, and I felt it was nothing that was - - as a matter of fact, I thought that we were in a pretty good position, which is borne out by the fact that the jury was deadlocked after deliberation at first.
>
> But I wanted to be careful.  I didn't see anything that would be upheld or sustained, and it's just a matter of trial strategy, I guess, as to whether or not you object to a closing like that.

(App. 489–90).  *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are

23

reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

A state court's finding on a claim of the ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents require this court, under 28 U.S.C. § 2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in *Strickland*, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. *See Williams v. Taylor*, 529 U.S. 362, 411 (2000). The petitioner must show by clear and convincing evidence that the PCR court's credibility determinations were incorrect, *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003), and that these incorrect credibility determinations resulted in an improper adjudication by the PCR court. 28 U.S.C. § 2254(d)(2). A petitioner has the burden of showing that trial counsel's performance was deficient and must overcome the strong presumption that a trial counsel's conduct falls within the broad range of reasonable professional assistance. *Strickland*, 466 U.S. at 687–89. Moreover, "it is clear that the state PCR court's decision was not 'based on' any error that inheres in this finding." *Wilson*, 352 F.3d at 859, which cites 28 U.S.C. § 2254(d)(2) (stating that the state court's decision must be "based on an unreasonable determination of the facts"); *see also Williams*, 529 U.S. at 410; and *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted). The PCR judge fairly and reasonably credited trial counsel's testimony on the issue (app. 489, 579–80). The PCR judge's finding shows a reasonable application of the established *Strickland* test and corresponding South Carolina case law: "Where counsel articulates valid reasons for employing a certain trial strategy, counsel's choice of tactics will not be deemed ineffective assistance" (app. 578) (citing *Whitehead v. State*, 417 S.E.2d 530 (1992)).

Based upon the foregoing, the petitioner has not shown the denial of relief was the result of an unreasonable application of federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, this ground for relief should be dismissed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 20) be granted. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

May 22, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).